**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____  District of    Delaware_____
                                        (State)

Case number *(If known)*: _____  Chapter ___11___

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy          04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Garden Fresh Restaurant Corp. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | Souplantation<br>Souplantation Express<br>Sweet Tomatoes<br>Sweet Tomatoes Express<br>Sweet Tomatoes Field Kitchen |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 33-0028786 |

**4.  Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 15822 Bernardo Center Drive, Suite A | |
| Number          Street | Number          Street |
| | |
| San Diego, CA 92127 | |
| City          State     ZIP Code | City          State     ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| San Diego | |
| County | Number          Street |
| | |
| | City          State     ZIP Code |

**5.  Debtor's website** (URL)     http://www.gardenfreshcorp.com

**6.  Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

Debtor    Garden Fresh Restaurant Corp.                                   Case number (if known)
          Name

**7.    Describe debtor's business**

A.  *Check one:*

☐  Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐  Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐  Railroad (as defined in 11 U.S.C. § 101(44))

☐  Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐  Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐  Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒  None of the above

Activities Related to Real Estate

B.  *Check all that apply:*

☐  Tax-exempt entity (as described in 26 U.S.C. § 501)

☐  Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐  Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

7225

**8.    Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐  Chapter 7

☐  Chapter 9

☒  Chapter 11.  *Check all that apply:*

☐  Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 on a consolidated basis (amount subject to adjustment on 4/01/19 and every 3 years after that).

☐  The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐  A plan is being filed with this petition.

☐  Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐  The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐  The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐  Chapter 12

**9.    Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒  No

☐  Yes.    District _____  When _____  Case number _____
                                                MM / DD / YYY

         District _____  When _____  Case number _____
                                                MM / DD / YYY

Debtor   Garden Fresh Restaurant Corp.
Name

Case number (if known) _____

---

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.

Debtor   See attached

District   See attached

Case number, if known   _____

Relationship   See attached

When   _____
MM / DD / YYY

---

**11.** **Why is the case filed in *this district*?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12.** **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?**  *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard?   _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other   _____

**Where is the property?**   _____
Number      Street

_____

_____
City                          State      ZIP Code

**Is the property insured?**

☐ No.
☐ Yes.  Insurance agency   _____

Contact name   _____

Phone   _____

---

Debtor  Garden Fresh Restaurant Corp.                                    Case number *(if known)* _____
        Name

---

| | **Statistical and administrative information** |
|---|---|

**13.** **Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14.** **Estimated number of creditors**

| | | | | | |
|---|---|---|---|---|---|
| ☐ | 1-49 | ☒ | 1,000-5,000 | ☐ | 25,001-50,000 |
| ☐ | 50-99 | ☐ | 5,001-10,000 | ☐ | 50,001-100,000 |
| ☐ | 100-199 | ☐ | 10,001-25,000 | ☐ | More than 100,000 |
| ☐ | 200-999 | | | | |

---

**15.** **Estimated assets**

| | | | | | |
|---|---|---|---|---|---|
| ☐ | $0-$50,000 | ☐ | $1,000,001-$10 million | ☐ | $500,000,001-$1 billion |
| ☐ | $50,001-$100,000 | ☐ | $10,000,001-$50 million | ☐ | $1,000,000,001-$10 billion |
| ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| ☐ | $500,001-$1 million | ☒ | $100,000,001-$500 million | ☐ | More than $50 billion |

---

**16.** **Estimated liabilities**

| | | | | | |
|---|---|---|---|---|---|
| ☐ | $0-$50,000 | ☐ | $1,000,001-$10 million | ☐ | $500,000,001-$1 billion |
| ☐ | $50,001-$100,000 | ☐ | $10,000,001-$50 million | ☐ | $1,000,000,001-$10 billion |
| ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| ☐ | $500,001-$1 million | ☒ | $100,000,001-$500 million | ☐ | More than $50 billion |

---

| | **Request for Relief, Declaration, and Signatures** |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17.** **Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  10/02/2016
             MM / DD / YYYY

x _____          John D. Morberg
Signature of authorized representative of debtor      Printed name

Title  Chief Executive Officer

---

| Debtor | Garden Fresh Restaurant Corp. | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

---

**18.    Signature of attorney**          x    */s/ Michael R. Nestor*                                    Date    10/3/2016

Signature of attorney for debtor                                                                    MM / DD / YYYY

Michael R. Nestor

Printed Name

Young Conaway Stargatt & Taylor, LLP

Firm name

1000 North King Street

Number          Street

Wilmington                                                    DE                    19801

City                                                              State              Zip Code

(302) 571 - 6600                                          mnestor@ycst.com

Contact phone                                              Email address

3526                                                            DE

Bar number                                                  State

---

**ATTACHMENT 1 TO VOLUNTARY PETITION**

<u>Pending Bankruptcy Cases Filed by Affiliated Entities</u>

On the date hereof, each of the related entities listed below, including the debtor in this chapter 11 case (collectively, the "<u>Debtors</u>"), will file or have filed a petition in this Court for relief under title 11 of the United States Code, 11 U.S.C. §§ 101–1532. Contemporaneously with the filing of their voluntary petitions, the Debtors are filing a motion requesting that the Court consolidate their chapter 11 cases for administrative purposes only.

**The Debtors are the following entities (along with their federal tax identification numbers):**

1. Garden Fresh Restaurant Intermediate Holding, LLC (46-1127513)

2. Garden Fresh Holdings, Inc. (20-0818804)

3. GF Holdings, Inc. (20-0818783)

4. Garden Fresh Restaurant Corp. (33-0028786)

5. Garden Fresh Promotions, LLC (27-3961376)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GARDEN FRESH RESTAURANT INTERMEDIATE HOLDING, LLC, *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT
AND LIST OF EQUITY INTEREST HOLDERS PURSUANT
TO FED. R. BANKR. P. 1007(a)(1), 1007(a)(3), AND 7007.1**

Pursuant to Rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy Procedure, Garden Fresh Restaurant Intermediate Holding, LLC, a Delaware corporation, and its subsidiaries, who are each debtors and debtors in possession in the above-captioned cases (each a "**Debtor**"), hereby state as follows:

1.      The following entities directly or indirectly own 10% or more of any class of the equity interests of Garden Fresh Restaurant Intermediate Holding, LLC:

| Equity Holder | Nature of Interest Held | Percent Ownership |
|---|---|---|
| Sun Garden Fresh, LLC | Class A Units | 62.33% |
| Sun Garden Fresh Finance, LLC | Class A Units | 37.67% |
| Garden Fresh Restaurant Holding, LLC | Class B Units | 100% |

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Garden Fresh Restaurant Intermediate Holding, LLC (7513); Garden Fresh Holdings, Inc. (8804); GF Holdings, Inc. (8783); Garden Fresh Restaurant Corp. (8786); and Garden Fresh Promotions, LLC (1376).  The location of the Debtors' corporate headquarters is 15822 Bernardo Center Drive, Suite A, San Diego, California 92127.

2.      The subsidiary listed below is 100% owned by Garden Fresh Restaurant Intermediate Holding, LLC:

- Garden Fresh Holdings, Inc.

3.      The subsidiary listed below is 100% owned by Garden Fresh Holdings, Inc.:

- GF Holdings, Inc.

4.      The subsidiary listed below is 100% owned by GF Holdings, Inc.:

- Garden Fresh Restaurant Corp.

5.      The subsidiary listed below is 100% owned by Garden Fresh Restaurant Corp.:

- Garden Fresh Promotions, LLC

| Fill in this information to Identify the case: |
| --- |
| Debtor Name:   Garden Fresh Restaurant Intermediate Holding, LLC |
| United States Bankruptcy Court for the:    District of Delaware |
| Case Number (If known): |

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | PRODUCE ALLIANCE, LLC 60 W MARKET ST # 140 SALINAS, CA  93901 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 831-455-7800 ROB@RUBYROBINSON.COM | TRADE | | $684,868.83 | | |
| 2 | TRAVELERS INSURANCE ONE TOWER SQUARE HARTFORD, CT  06183 | CONTACT: CHIEF FINANCIAL OFFICER FAX: 877-784-5329 | TRADE | | $491,234.00 | | |
| 3 | RADIOWAVE MARKETING AND PROMOTIONS LLC PROMOTIONS LLC 3740 MOORE STREET LOS ANGELES, CA  90066 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 310-621-5454 INFO@RADIOWAVEMARKETING.COM | TRADE | | $472,094.00 | | |
| 4 | TRINITY FRESH 8200 BERRY AVE SUITE 140 SACRAMENTO, CA  95828 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 916-714-7368 FAX: 916-714-7763 INFO@TRINITYFRESH.COM | TRADE | | $392,342.25 | | |
| 5 | ECOLAB INCORPORTED 370 WABASHA STREET NORTH ST PAUL, MN  55102 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 800-352-5326 FAX: 651-225-3098 INSTITUTIONALORDERS@ECOLAB.COM | TRADE | | $391,551.18 | | |
| 6 | RYDER TRUCK RENTAL INC. 11690 NW 105TH STREET MIAMI, FL  33178 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 305-500-3726 CUSTOMER_SERVICE-US@RYDER.COM | TRADE | | $370,161.12 | | |

**Debtor:** Garden Fresh Restaurant Intermediate Holding, LLC

Case Number (if known):

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7  GOLDEN WEST TRADING<br>4401 S DOWNEY RD<br>VERNON, CA  90058 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 888-807-3663<br>FAX: 323.585.8483<br>INFO@GWFG.COM | TRADE | | $316,377.00 | | |
| 8  SUPERIOR PAPER & PLASTICS, INC<br>1930 E. 65TH STREET<br>LOS ANGELES, CA  90001-2111 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 323-581 5555<br>FAX: 323-581 7777 | TRADE | | $259,976.37 | | |
| 9  ALTA DENA DAIRY<br>17851 E. RAILROAD<br>CITY OF INDUSTRY, CA  91748 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 800-535-1369<br>MEDIA@DEANFOODS.COM | TRADE | | $237,229.63 | | |
| 10  KENT PRECISION FOODS GROUP INC<br>11457 OLDE CABIN RD #100<br>ST LOUIS, MO  63141 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 314-567-1400<br>FAX: 314-567-5402 | TRADE | | $200,237.48 | | |
| 11  ATALANTA CORPORATION.<br>1 ATALANTA PLAZA<br>ELIZABETH, NJ  07206 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 908-351-8000<br>FAX: 908-555-8000 | TRADE | | $196,362.60 | | |
| 12  GROUP KIRKMAN, LLC<br>P.O. BOX 231400<br>ENCINITAS, CA  92023-1400 | CONTACT: TERRY JOHNSON<br>PHONE: 858-456-0107<br>FAX: 858-550-0449<br>EMAILINGTERRY@GMAIL.COM | LANDLORD | | $190,471.51 | | |
| 13  COCA COLA U.S.A.<br>1334 S CENTRAL AVE<br>LOS ANGELES, CA  90021 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 213-744-8316<br>ROMACIAS@NA.COKECCE.COM | TRADE | | $185,070.49 | | |
| 14  RAMCO REFRIGERATION & AIR  INC<br>3921 E. MIRALOMA AVE.<br>ANAHEIM, CA  92806-6201 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 714-792-1034<br>FAX: 714-792-1046 | TRADE | | $177,305.98 | | |
| 15  A ZEREGA'S SONS, INC.<br>200 NW VICTORIA DR<br>LEE'S SUMMIT, MO  64086 | CONTACT: CHIEF FINANCIAL OFFICER<br>PHONE: 201-797-1400<br>FAX: 201-797-0148 | TRADE | | $162,174.00 | | |

**Debtor:** Garden Fresh Restaurant Intermediate Holding, LLC                    Case Number (if known):

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 16  CYPRESS CREEK ASSOCIATES LP CYPRESS CREEK ASSOCIATES LP P.O. BOX 5020 NEW HYDE PARK, NY  11042 | CONTACT: KIMCO REALTY PHONE: 516-869-2677 RSCHOLEM@KIMCOREALTY. COM | LANDLORD | | $156,289.76 | | |
| 17  ARTHUR SCHUMAN WEST 6180 ALCOA AVE VERNON, CA  90058 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 323-583-1251 | TRADE | | $154,995.80 | | |
| 18  ORACLE AMERICA, INC. 500 ORACLE PARKWAY REDWOOD, CA  94065 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 212.508.7935 FAX: 650-506-7114 DEBORAH.HELLINGER@ORA CLE.COM | TRADE | | $145,927.15 | | |
| 19  ARAMARK UNIFORM SERVICES 22808 NETWORK PLACE CHICAGO, IL  60673-1228 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 951-231-6266 PAM.JACKSON@UNIFORM.A RAMARK.COM | TRADE | | $143,650.20 | | |
| 20  ARC PROPERTIES OPERATING PARTNERSHIP LP 2325 EAST CAMELBACK ROAD, SUITE 1100 PHOENIX, AZ  85016 | CONTACT: C/O AMERICAN REALTY CAPITAL PROPERTIES, INC PHONE: 602-778-6220 FAX: 480-449-7023 TJONES@ARCPREIT.COM | LANDLORD | | $140,982.46 | | |
| 21  WEINGARTEN REALTY INVESTORS P.O. BOX 301074 DALLAS, TX  75303-1074 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 713-868-6590 CCLOTHIER@WEINGARTEN.C OM | LANDLORD | | $139,705.97 | | |
| 22  TWC SERVICES, INC. 2601 BELL AVENUE DES MONINES, IA  50321-1189 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 855-698-9224 FAX: 800-519-2587 | TRADE | | $135,019.87 | | |
| 23  ANDREW'S REFRIGERATION, INC 5617 E HILLERY DR SCOTTSDALE, AZ  85254-2449 | CONTACT: JON PHILLIPS PHONE: 602.992.9560 JON@ANDREWSAZ.COM | TRADE | | $132,670.27 | | |
| 24  SCA TISSUE NORTH AMERICA LLC BOX 200, SE-100 23 STOCKHOLM  SWEDEN | CONTACT: JAN CARLSON PHONE: 46-8-788-52-59 JAN.CARLSON@SCA.COM | TRADE | | $129,944.72 | | |

Debtor: Garden Fresh Restaurant Intermediate Holding, LLC

Case Number (if known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 25 | GALLERIA CORPORATE CENTRE MAIENTENANCE DISTRICT HEDMARK 79 ROYAL SAINT GEORGE'S WAY RANCHO MIRAGE, CA 92270 | CONTACT: ATTN: DAVID MARS PHONE: 970-274-6902 DMARS@HEDMARK.US | LANDLORD | | $129,809.33 | | |
| 26 | RC'S MECHANICAL SERVICES 4161 INGOT STREET FREMONT, CA 94538 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 510-438-8806 FAX: 877-727-8480 | TRADE | | $120,554.79 | | |
| 27 | SILVERSTATE REFRIGERATION & HVAC, LLC HVAC, LLC 4535 COPPER SAGE ST LAS VEGAS, NV 89115 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 702.433.5008 FAX: 702-433.0811 BPETERSON@SSRFG.COM | TRADE | | $115,954.81 | | |
| 28 | JAMES WALSH 15822 BERNARDO CENTER DRIVE SUITE A SAN DIEGO, CA 92127-2320 | CONTACT: JAMES WALSH | FORMER EMPLOYEE | | $115,085.47 | | |
| 29 | BRE IMAGINATION OFFICE HOLDCO LLC BLDG ID#18670 P.O. BOX 209259 AUSTIN, TX 78720-9259 | CONTACT: BRE CA OFFICE OWNER LLC PHONE: 855-367-0345 | LANDLORD | | $111,623.20 | | |
| 30 | NATIONAL FROZEN FOODS CORP. 1600 FAIRVIEW AVE. E., SUITE 200 SEATTLE, WA 98102 | CONTACT: CHIEF FINANCIAL OFFICER PHONE: 206-322-8900 FAX: 206-322-4458 | TRADE | | $111,608.89 | | |

Debtor    Garden Fresh Restaurant Corp.                                    Case number *(if known)* _____
           Name

---

Debtor Name

United States Bankruptcy Court for the: _____ District of <u>Delaware</u>

Case Number (if known) _____

---

<u>Official Form 202</u>

# Declaration Under Penalty of Perjury for Non-Individual Debtors  12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)*

☐  *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐  *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐  *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐  *Schedule H: Codebtors (Official Form 206H)*

☐  *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐  Amended *Schedule _____*

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒   Other document that requires a declaration: <u>Consolidated Corporate Ownership Statement & List of Equity Security Holders</u>

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __10/02/2016__
                    MM / DD / YYYY

x  */s/* _____        John D. Morberg
    Signature of authorized representative of debtor        Printed name

Title    Chief Executive Officer

Official Form 202                    Voluntary Petition for Non-Individuals Filing for Bankruptcy                    page 1

**GARDEN FRESH RESTAURANT CORP.**

**OFFICER'S CERTIFICATE**

**OCTOBER  3 , 2016**

I, David A. Carr, hereby certify that I am the duly elected, qualified and acting Chief Financial Officer of Garden Fresh Restaurant Corp., a Delaware corporation (the "Company"), and am authorized to execute this Officer's Certificate (the "Certificate") on behalf of the Company.  This Certificate is delivered in connection with that certain Senior Secured Super-Priority Debtor-In-Possession Credit Agreement dated as of the date hereof (the "Agreement"), by and among Garden Fresh Holdings, Inc., a Delaware corporation (the "Parent"), the Company, as borrower and debtor-in-possession in the Chapter 11 Cases, each other subsidiary of the Parent listed as a "Guarantor" on the signature pages thereto (together with the Parent, each a "Guarantor" and collectively, the "Guarantors" and, together with the Company, the "Loan Parties"), the lenders from time to time party thereto (each a "DIP Lender" and collectively, the "DIP Lenders"), Cortland Capital Market Services LLC, a Delaware limited liability company, as collateral agent for the DIP Lenders (in such capacity, together with its successors and assigns in such capacity, the "Collateral Agent") and as administrative agent for the DIP Lenders (in such capacity, together with its successors and assigns in such capacity, the "Administrative Agent" and together with the Collateral Agent, each a "DIP Agent" and collectively, the "DIP Agents").  Unless the context requires otherwise, all capitalized terms used but not defined in this Certificate shall have the meanings set forth in the Agreement.

Solely in my official capacity as Chief Financial Officer of the Company and not individually, I certify as of the date hereof that:

(a)     Attached hereto as Exhibit A is a true and complete copy of the Certificate of Incorporation of the Company, and all amendments thereto, certified by the Secretary of State of the State of Delaware, as of a recent date not more than 45 days prior to the Closing Date, which sets forth the complete name of the Company and the organizational number of the Company, if an organizational number is issued in such jurisdiction.  No amendment of such Certificate of Incorporation has been made since the date of such certification.

(b)     Attached hereto as Exhibit B is a true and complete copy of the duly adopted Amended and Restated Bylaws of the Company, together with all amendments thereto as in full force and effect through the date hereof.

(c)     Attached hereto as Exhibit C is a true and complete copy of the resolutions duly adopted by the Board of Directors of the Company (the "Resolutions") approving and authorizing (i) the borrowings under the Agreement, the other DIP Loan Documents and the transactions contemplated thereby, and (ii) the execution, delivery and performance of the DIP Loan Documents to which it is a party on the date hereof or will be a party, and the execution and delivery of the other documents to be delivered by such Person in connection with the DIP Loan Documents, and the transactions contemplated thereby.  Such Resolutions have

not been amended, rescinded or modified since their adoption and remain in full force and effect as of the date hereof and are the only resolutions that have been adopted by the Board of Directors of the Company with respect to the subject matter thereof.

(d)     The persons whose names, titles and signatures appear on <u>Exhibit D</u> attached hereto are, on and as of the date hereof, duly elected, qualified and acting officers of the Company occupying the offices set forth opposite their respective names on <u>Exhibit D</u>, and the signatures set forth opposite their respective names are their true signatures, and each of such officers is duly authorized to execute and deliver on behalf of the Company each of the other DIP Loan Documents to which it is a party and any other agreement, instrument or document to be delivered by the Company pursuant to the DIP Loan Documents to which it is a party and any Notices of Borrowing and all other notices under the Agreement and any other DIP Loan Document to which it is a party.

(e)     The representations and warranties set forth in Article VI of the Agreement and in each other DIP Loan Document, certificate or other writing delivered to any DIP Agent or DIP Lender pursuant hereto or thereto on or prior to the Closing Date are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of the Closing Date as though made on and as of such date (it being understood and agreed that any representation or warranty which by its terms is made as of a specified date shall be required to be true and correct in all material respects only as of such specified date (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification)).

(f)     No Default or Event of Default has occurred and is continuing on the Closing Date or would result from the Agreement or the other DIP Loan Documents becoming effective in accordance with its or their respective terms, or the making of the Initial DIP Loans (or other extensions of credit) under the Agreement.

(g)     Each Material Contract in existence on the Petition Date remains in full force and effect.  Unless otherwise disclosed, none of the Material Contracts have been amended or otherwise modified.  None of the Loan Parties have breached or defaulted in any material respects with respect to their obligations under such agreements.

\* \* \* \* \*

IN WITNESS WHEREOF, I have hereunto set my hand on behalf of the Company as of the date hereof.

GARDEN FRESH RESTAURANT CORP.

By: _____

Name: David A. Carr

Title:   Chief Financial Officer


The undersigned, being the duly elected and qualified Chief Executive Officer and President of the Company, hereby certifies that David A. Carr is the duly elected and qualified Chief Financial Officer of the Company and that the foregoing signature appearing above his name is his genuine signature.

IN WITNESS WHEREOF, I have hereunto set my hand on behalf of the Company as of the date hereof.

GARDEN FRESH RESTAURANT CORP.

By: _____

Name: John D. Morberg

Title:   Chief Executive Officer and President

## EXHIBIT A

Certificate of Incorporation

*Attached.*



# Delaware

## The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT
COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED
CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF
"GARDEN FRESH RESTAURANT CORP." AS RECEIVED AND FILED IN THIS
OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, FILED THE TENTH DAY OF MARCH, A.D.
2004, AT 4:07 O`CLOCK P.M.

CERTIFICATE OF CORRECTION, FILED THE TENTH DAY OF MARCH,
A.D. 2005, AT 4:53 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

2133687  8100X
SR# 20166011724

Authentication: 203087367
Date: 09-30-16

You may verify this certificate online at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 04:07 PM 03/10/2004*
*FILED 04:07 PM 03/10/2004*
*SRV 040180262 – 2133687 FILE*

# AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
### of
## GARDEN FRESH RESTAURANT CORP.

### (Pursuant to Sections 228, 242 and 245 of the
### General Corporation Law of the State of Delaware)

**Garden Fresh Restaurant Corp.** (the "Corporation"), a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware as set forth in Title 8 of the Delaware Code (the "DGCL"), hereby certifies as follows:

FIRST:        That the Corporation was originally incorporated under the name of Brooke & Mack, Inc. in the original Certificate of Incorporation of the Corporation filed with the Secretary of State of the State of Delaware on July 31, 1987.

SECOND:    That the Amended and Restated Certificate of Incorporation of the Corporation attached hereto as Exhibit A amends and restates the Corporation's Certificate of Incorporation, as amended and restated to date, and has been duly adopted in accordance with the provisions of Sections 242 and 245 of the DGCL by the directors and stockholders of the Corporation.

THIRD:        That the Amended and Restated Certificate of Incorporation so adopted reads in full as set forth in Exhibit A attached hereto and is hereby incorporated herein by this reference.

IN WITNESS WHEREOF, Garden Fresh Restaurant Corp. has caused this Certificate to be signed by the President this 10th day of March 2004.

**GARDEN FRESH RESTAURANT CORP.**

David W. Qualls
President

**AMENDED AND RESTATED**
**CERTIFICATE OF INCORPORATION**
**of**
**GARDEN FRESH RESTAURANT CORP.**

FIRST:     The name of the Corporation is Garden Fresh Holdings, Inc. (the "Corporation").

SECOND:     The address of the registered office of the Corporation in the State of Delaware is Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, State of Delaware.  The name of the registered agent of the Corporation in the State of Delaware at such address is The Corporation Trust Company.

THIRD:     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware, as from time to time amended.

FOURTH:     The total number of shares of capital stock which the Corporation shall have authority to issue is Fifty-Five Thousand (55,000), of which Thirty Thousand (30,000) shares shall be Common Stock having a par value of $0.01 per share and Twenty-Five Thousand (25,000) shares shall be Preferred Stock having a par value of $0.01 per share.

Except as otherwise provided by law, the shares of capital stock of the Corporation, regardless of class, may be issued by the Corporation from time to time in such amounts, for such lawful consideration and for such corporate purpose(s) as the board of directors may from time to time determine.

Subject to the laws of the State of Delaware and to the limitations set forth below, authority is hereby vested in the board of directors of the Corporation to issue said Twenty-Five Thousand (25,000) shares of Preferred Stock from time to time in one or more series, with such designations, voting powers, preferences and relative, participating, optional and other rights, and such qualifications, limitations or restrictions thereof, as shall be stated in the resolution or resolutions providing for the issuance of such stock adopted by the board of directors.  Without limiting the generality of the foregoing, in the resolution or resolutions providing for the issuance of each particular series of Preferred Stock, the board of directors is expressly authorized:

(a)     to fix the distinctive serial designation of the shares of any such series;

(b)     to fix the consideration for which the shares of any such series are to be issued;

(c)     to fix the rate per annum, if any, at which the holders of the shares of any such series shall be entitled to receive dividends, the dates on which such dividends shall be payable, whether such dividends shall be cumulative or noncumulative, and if cumulative, the date or dates from which such dividends shall be cumulative;

(d)     to fix the price or prices at which, the times during which, and the other terms, if any, upon which the shares of any such series may be redeemed;

(e)     to fix the rights, if any, which the holders of shares of any such series shall have in the event of a dissolution or upon distribution of the assets of the Corporation;

(f)     to determine whether the shares of any such series shall be made convertible into or exchangeable for other securities of the Corporation, including shares of the Common Stock of the Corporation or shares of any other series of the Preferred Stock of the Corporation, now or hereafter authorized, or any new class of stock of the Corporation hereafter authorized, the price or prices or the rate or rates at which such conversion or exchange may be made, and the terms and conditions upon which any such conversion right or exchange right may be exercised;

(g)     to determine whether a sinking fund shall be provided for the purchase or redemption of shares of such series and, if so, to fix the terms and amount of such sinking fund;

(h)     to determine whether the shares of any such series shall have voting rights, and, if so, to fix the voting rights of the shares of such series, provided, however, that the holders of shares of Preferred Stock shall not be entitled to more than one vote per share when voting as a class with the holders of shares of Common Stock; and

(i)     to fix such other preferences, rights, privileges and restrictions applicable to any such series as may be permitted by law.

Subject to the prior rights of the holders of any shares of Preferred Stock, the holders of the Common Stock shall be entitled to receive, to the extent permitted by law, such dividends as may be declared from time to time by the board of directors.

FIFTH:     In furtherance and not in limitation of the powers conferred by law, subject to any limitations contained elsewhere in this Certificate of Incorporation, bylaws of the Corporation may be adopted, amended or repealed by a majority of the board of directors of the Corporation, but any bylaws adopted by the board of directors may be amended or repealed by the stockholders entitled to vote thereon. Election of directors need not be by written ballot.

SIXTH:     The number of directors of this Corporation shall be fixed from time to time by the bylaws or amendment thereof adopted by the board of directors of the Corporation.

SEVENTH:     (a) A director of the Corporation shall not be personally liable either to the Corporation or to any stockholder for monetary damages for breach of fiduciary duty as a director, except (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, or (ii) for acts or omissions which are not in good faith or which involve intentional misconduct or knowing violation of the law, or (iii) for any matter in respect of which such director shall be liable under Section 174 of Title 8 of the General Corporation Law of the State of Delaware or any amendment thereto or successor provision thereto, or (iv) for any transaction from which the director shall have derived an improper personal benefit. Neither amendment nor repeal of this paragraph (a) nor the adoption of any provision of the Certificate

of Incorporation inconsistent with this paragraph (a) shall eliminate or reduce the effect of this paragraph (a) in respect of any matter occurring, or any cause of action, suit or claim that, but for this paragraph (a) of this Article Seventh, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

(b)     The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to, or testifies in, any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative in nature, by reason of the fact that such person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, employee benefit plan, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding to the full extent permitted by law, and the Corporation may adopt by-laws or enter into agreements with any such person for the purpose of providing for such indemnification.

# State of Delaware  -  Division of Corporations

## DOCUMENT FILING SHEET

FAX

| Priority 1 (One hr) | Priority 2 (Two Hr) | Priority 3 (Same Day) | Priority 4 (24 Hour) | Priority 5 (Must Approval) | Priority 6 (Reg. Approval) | Priority 7 (Reg. Work) |
|---|---|---|---|---|---|---|

DATE SUBMITTED __3-10-05__

REQUESTOR NAME __The Corporation Trust Company/Wilm./__          FILE DATE __3-10-05__

ADDRESS _____          FILE TIME _____

ATTN. __JAMES PATTERSON__

PHONE __(302) 777-0210__

NAME of COMPANY/ENTITY __GARDEN FRESH RESTAURANT CORP.__

SRV NUMBER __0504104152__     FILE NUMBER __2133687__     FILER'S NUMBER _____     RESERVATION NO. _____

TYPE OF DOCUMENT __CORRECTION__          DOCUMENT CODE __103__

CHANGE of NAME _____  CHANGE of AGENT/OFFICE _____  CHANGE OF STOCK _____

| CORPORATIONS | | |
|---|---|---|
| FRANCHISE TAX    YEAR ____ | $ | ____ |
| FILING FEE TAX | $ | ____ |
| RECEIVING & INDEXING | $ | ____ |
| CERTIFIED COPIES   NO. __1__ | $ | ____ |
| SPECIAL SERVICES | $ | ____ |
| KENT COUNTY RECORDER | $ | ____ |
| NEW CASTLE COUNTY RECORDER | $ | ____ |
| SUSSEX COUNTY RECORDER | $ | ____ |
| TOTAL | $ | ____ |

**METHOD of RETURN**

____ MESSENGER/PICKUP
____ FED. EXPRESS Acct.# _____
____ REGULAR MAIL
____ FAX No. _____
____ OTHER _____

**COMMENTS/FILING INSTRUCTIONS**

SUBMITTED TO HOLD FILING DATE PENDING NEW DOC WITH CORRECTED ARTICLES THIRD + FOURTH

**CREDIT CARD CHARGES**

You have my authorization to charge my credit card for this service:

____ ____ - ____ - ____ - ____     Exp. Date_____

Signature _____          Printed Name _____

**AGENT USE ONLY**

6319050

**INSTRUCTIONS**

1. Fully shade in the required Priority square using a dark pencil or marker, staying within the square.
2. Each request must be submitted as a separate item, with its own Filing sheet as the FIRST PAGE.

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 05:04 PM 03/10/2005*
*FILED 04:53 PM 03/10/2005*
*SRV 050204152 – 2133687 FILE*

## CERTIFICATE OF CORRECTION
## OF
## AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
## OF
## GARDEN FRESH RESTAURANT CORP.

Garden Fresh Restaurant Corp. (the "Corporation"), a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware, does hereby certify that:

FIRST:    The name of the Corporation is Garden Fresh Restaurant Corp.

SECOND:    The Amended and Restated Certificate of Incorporation of the Corporation (the "Certificate"), which was filed by the Secretary of State of the State of Delaware on March 10, 2004, requires correction as permitted by Section 103 of the General Corporation Law of the State of Delaware.

THIRD:    The inaccuracy or defect of the Certificate to be corrected is as follows:

Article First in the Certificate incorrectly states the name of the Corporation.

FOURTH:    Article First of the Certificate is corrected to read as follows:

"The name of the Corporation is Garden Fresh Restaurant Corp. (the "Corporation")."

IN WITNESS WHEREOF, the Corporation has caused this certificate to be signed by the President, this 4th day of February, 2005.

By: _____
         David W. Qualls
         President

HO1\908447\02.6LJ77021.DOC\47477.0001

## EXHIBIT B

Bylaws

*Attached.*

**AMENDED AND RESTATED**
**BYLAWS**
**OF**
**GARDEN FRESH RESTAURANT CORP.**
**A Delaware Corporation**

*(Adopted as of August 6, 2013)*

ARTICLE I.

OFFICES

Section 1.    Registered Office.  The registered office of the corporation in the State of Delaware shall be located at 1209 Orange Street, in the City of Wilmington, County of New Castle, 19801.  The name of the corporation's registered agent at such address shall be The Corporation Trust Company.  The registered office and/or registered agent of the corporation may be changed from time to time by action of the board of directors.

Section 2.    Other Offices.  The corporation may also have offices at such other places, both within and without the State of Delaware, as the board of directors may from time to time determine or the business of the corporation may require.

ARTICLE II.

MEETINGS OF STOCKHOLDERS

Section 1.    Annual Meetings.  An annual meeting of the stockholders shall be held each year.  The date, time and place, if any, of the annual meeting shall be determined by either the board of directors or the president of the corporation.  No annual meeting of the stockholders need be held if not required by the certificate of incorporation or by the General Corporation Law of the State of Delaware.

Section 2.    Special Meetings.  Special meetings of stockholders may be called for any purpose (including, without limitation, the filling of board vacancies and newly created directorships) and may be held at such time and place (if any), within or without the State of Delaware, as shall be stated in a written notice of meeting or in a duly executed waiver of notice thereof.  Such meetings may be called at any time by the board of directors or the president and shall be called by the president upon the written request of holders of shares entitled to cast not less than fifty percent (50%) of the votes at the meeting, which written request shall state the purpose or purposes of the meeting and shall be delivered to the president.

Section 3.    Place of Meetings.  The board of directors or the president may designate a place (if any), either within or without the State of Delaware, as the place of meeting for any annual meeting or for any special meeting.  If no designation is made, then the place of meeting shall be the principal executive office of the corporation.  If stockholders are permitted to participate or be deemed present at a stockholder meeting by means of remote communications, the procedures set forth in Section 211(a) of the General Corporation Law of the State of Delaware shall apply.

Section 4.    Notice.  Whenever stockholders are required or permitted to take any action at a meeting, written or printed notice stating the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of special meetings, the purpose or purposes, of such meeting, shall be given to each stockholder entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the meeting.  All such notices shall be delivered, either personally, by mail, or by a form of electronic transmission consented to by the stockholder to whom the notice is given, by or at the direction of the board of directors, the president or the secretary, and if mailed, such notice shall be deemed to be delivered when deposited in the United States mail, postage prepaid, addressed to the stockholder at his, her or its address as the same appears on the records of the corporation. If given by electronic transmission, such notice shall be deemed to be delivered (a) if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice; (b) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice; (c) if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (i) such posting, and (ii) the giving of such separate notice, and (d) if by any other form of electronic transmission, when directed to the stockholder.  Any such consent shall be revocable by the stockholder by written notice to the corporation.  Any such consent shall be deemed revoked if (x) the corporation is unable to deliver by electronic transmission two (2) consecutive notices given by the corporation in accordance with such consent and (y) such inability becomes known to the secretary or an assistant secretary of the corporation or to the transfer agent; provided, however, that the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened.

Section 5.    Stockholders List.  The officer who has charge of the stock ledger of the corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting; provided, however, if the record date for determining the stockholders entitled to vote is less than ten (10) days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date, arranged in alphabetical order and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Nothing contained in this section shall require the corporation to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, for a period of at least ten (10) days prior to the meeting: (1) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (2) during ordinary business hours, at the principal place of business of the corporation. In the event that the corporation determines to make the list available on an electronic network, the corporation may take reasonable steps to ensure that such information is available only to stockholders of the corporation. If the meeting is to be held at a place, then a list of stockholders entitled to vote at the meeting shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then such list shall also be open to the examination of any stockholder

2

during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting.

Section 6.    Quorum.  The holders of a majority of the votes represented by the issued and outstanding shares of capital stock entitled to vote thereon, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders, except as otherwise required by statute or by the certificate of incorporation.  If a quorum is not present, the affirmative vote of the holders of a majority of the voting power of the shares present in person or represented by proxy at the meeting, and entitled to vote at the meeting, may adjourn the meeting to another time and/or place, if any.  The chairperson of the meeting shall also have the power to adjourn a stockholder meeting, whether or not a quorum is present.  The chairperson of a stockholder meeting shall be the president of the corporation or such other person designated by the board of directors.

Section 7.    Adjourned Meetings.  When a meeting is adjourned to another time and place, if any, notice need not be given of the adjourned meeting if the time, place and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken.  At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than thirty (30) days, a notice of adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.  If after the adjournment a new record date for stockholders entitled to vote is fixed for the adjourned meeting, the board of directors shall fix a new record date for notice of such adjourned meeting in accordance with Section 213(a) of the General Corporation Law of the State of Delaware, and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

Section 8.    Vote Required.  When a quorum is present, the affirmative vote of the holders of a majority of the voting power of the shares present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders, unless the question is one upon which by express provisions of an applicable law or of the certificate of incorporation a different vote is required, in which case such express provision shall govern and control the decision of such question.

Section 9.    Voting Rights.  Except as otherwise provided by the General Corporation Law of the State of Delaware or by the certificate of incorporation or any amendments thereto and subject to Section 3 of Article VI hereof, every stockholder shall at every meeting of the stockholders be entitled to one (1) vote in person or by proxy for each share of common stock held by such stockholder.

Section 10.    Proxies.  Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period. At each meeting of the stockholders, and before any voting commences, all proxies filed at or before the meeting shall be submitted to and examined by the secretary or a person designated by

3

the secretary, and no shares may be represented or voted under a proxy that has been found to be invalid or irregular.

Section 11.   Conduct of Business.   The chairperson of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seem to him or her in order.  The date and time of the opening and closing of the polls for each matter upon which the stockholders will vote at the meeting shall be announced at the meeting.

Section 12.   Action by Written Consent.   Unless otherwise provided in the certificate of incorporation, any action required to be taken at any annual or special meeting of stockholders of the corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing setting forth the action so taken and bearing the dates of signature of the stockholders who signed the consent or consents is signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and is delivered to the corporation by delivery to its registered office in the state of Delaware, or the corporation's principal place of business, or an officer or agent of the corporation having custody of the book or books in which proceedings of meetings of the stockholders are recorded. Delivery made to the corporation's registered office shall be by hand or by certified or registered mail, return receipt requested or by reputable overnight courier service.  All consents properly delivered in accordance with this section shall be deemed to be recorded when so delivered.  No written consent shall be effective to take the corporate action referred to therein unless, within sixty (60) days after the earliest dated consent delivered to the corporation as required by this section, written consents signed by the holders of a sufficient number of shares to take such corporate action are so recorded.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing, in accordance with Section 228(e) of the General Corporation Law of the State of Delaware (as amended from time to time).  Any action taken pursuant to such written consent or consents of the stockholders shall have the same force and effect as if taken by the stockholders at a meeting thereof.

Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

Section 13.   Action by Telegram, Cablegram or Other Electronic Transmission Consent.  A telegram, cablegram or other electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder, or by a person or persons authorized to act for a stockholder or proxyholder, shall be deemed to be written, signed and dated for the purposes of this section; provided that any such telegram, cablegram or other electronic transmission sets forth or is delivered with information from which the corporation can determine (a) that the telegram, cablegram or other electronic transmission was transmitted by the stockholder or proxyholder or by a person or persons authorized to act for the stockholder or proxyholder and (b) the date on which such stockholder or proxyholder or authorized person or

4

persons transmitted such telegram, cablegram or electronic transmission. The date on which such telegram, cablegram or electronic transmission is transmitted shall be deemed to be the date on which such consent was signed. No consent given by telegram, cablegram or other electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and until such paper form shall be delivered to the corporation by delivery to its registered office in the State of Delaware, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded if, to the extent and in the manner provided by resolution of the board of directors.

## ARTICLE III.

## DIRECTORS

Section 1.     General Powers.   The business and affairs of the corporation shall be managed by or under the direction of the board of directors.

Section 2.     Number, Election and Term of Office.   The number of initial directors shall be the number of directors elected by the incorporator or named in the initial certificate of incorporation, and thereafter, the number of directors shall be established from time to time by resolution of the board of directors in accordance with the next sentence. The board of directors shall consist of that number of directors as determined from time to time by the board of directors, but shall in no event exceed ten (10). The directors shall be elected by a plurality of the votes of the shares present in person or represented by proxy at the meeting and entitled to vote in the election of directors. The directors shall be elected in this manner at the annual meeting of the stockholders, except as provided in Section 4 of this Article III. Each director elected shall hold office until a successor is duly elected and qualified or until his or her earlier death, resignation or removal as hereinafter provided. The provisions in this Article III shall be subject to the terms and conditions of any stockholders' agreement then in effect by and among the corporation and any of its stockholders (the "Stockholders Agreements") and the certificate of incorporation.

Section 3.     Removal and Resignation.   Subject to the provision of the Stockholders Agreements, any director or the entire board of directors may be removed at any time, with or without cause, by the holders of a majority of the voting power of the shares entitled to vote thereon. Whenever the holders of any class or series are entitled to elect one or more directors by the provisions of the certificate of incorporation or the Stockholders Agreements, the provisions of this section shall apply, in respect to the removal without cause of a director or directors so elected, to the vote of the holders of the outstanding shares of that class or series and not to the vote of the outstanding shares as a whole. Any director may resign at any time upon notice given in writing or by electronic transmission to the corporation. A resignation is effective when the resignation is delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events.

Section 4.     Vacancies.   Subject to the provisions of the Stockholders Agreements, vacancies and newly created directorships resulting from any increase in the authorized number of directors may be filled by the remaining directors, even if less than a quorum, and in accordance with the Stockholders Agreements. Each director so chosen shall hold office until a

successor is duly elected and qualified or until his or her earlier death, resignation or removal as herein provided.

Section 5.    Annual Meetings.  The annual meeting of each newly elected board of directors shall be held without notice immediately after, and at the same place, if any, as the annual meeting of stockholders.

Section 6.    Other Meetings and Notice.  Regular meetings, other than the annual meeting, of the board of directors may be held without notice at such time and at such place, if any, as shall from time to time be determined by resolution of the board of directors and promptly communicated to all directors then in office.  Special meetings of the board of directors may be called from time to time by any director, and such director calling such meeting may fix the date, time and place (if any) of such meeting.  Notice of each special meeting of the board of directors stating the date, place, if any, and time of such meeting shall be given to each director by hand, telephone, telecopy, electronic mail, overnight courier or U.S. mail at least twenty-four (24) hours prior to any special meeting of the board of directors.  Unless otherwise indicated in the notice thereof, any and all business may be transacted at a special meeting.

Section 7.    Quorum, Required Vote and Adjournment.  Directors then in office holding a majority (or such greater number required by applicable law) of the total voting power of the total number of authorized directorships shall constitute a quorum for the transaction of business.  The affirmative vote of directors holding a majority of votes present at a meeting at which a quorum is present shall be the act of the board of directors.

Section 8.    Committees.  The board of directors may designate one or more committees, each committee to consist of one or more of the directors of the corporation, which to the extent provided in such resolution or these bylaws shall have and may exercise the powers of the board of directors in the management and affairs of the corporation, except as otherwise limited by law.  The board of directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the board of directors.  Each committee shall keep regular minutes of its meetings and report the same to the board of directors when required.

Section 9.    Committee Rules.  Each committee of the board of directors may fix its own rules of procedure and shall hold its meetings as provided by such rules, except as may otherwise be provided by a resolution of the board of directors designating such committee.  In the event that a member and that member's alternate, if alternates are designated by the board of directors as provided in Section 8 of this Article III, of such committee is or are absent or disqualified, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the board of directors to act at the meeting in place of any such absent or disqualified member.

Section 10.    Communications Equipment.  Members of the board of directors or any committee thereof may participate in and act at any meeting of such board or committee by

6

means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation in the meeting pursuant to this section shall constitute presence in person at the meeting.

Section 11.    Presumption of Assent.    Any member of the board of directors or any committee thereof who is present at a meeting shall be conclusively presumed to have assented to any action taken unless his or her dissent shall be entered in the minutes of the meeting or unless his or her written dissent to such action shall be filed with the person acting as the secretary of the meeting before the adjournment thereof or shall be forwarded by registered mail to the secretary of the corporation immediately after the adjournment of the meeting. Such right to dissent shall not apply to any member who voted in favor of such action.

Section 12.    Action by Written Consent.    Unless otherwise restricted by the certificate of incorporation, any action required or permitted to be taken at any meeting of the board of directors, or of any committee thereof, may be taken without a meeting if all members of the board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the board, or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

## ARTICLE IV.

## OFFICERS

Section 1.    Number.    The officers of the corporation shall be elected by the board of directors and shall consist of a president, one (1) or more vice-presidents, a secretary, a treasurer, and such other officers and assistant officers as may be deemed necessary or desirable by the board of directors. Any number of offices may be held by the same person. In its discretion, the board of directors may choose not to fill any office for any period as it may deem advisable.

Section 2.    Election and Term of Office.    The officers of the corporation shall be elected annually by the board of directors at the first meeting of the board of directors held after each annual meeting of stockholders or as soon thereafter as conveniently may be. Vacancies may be filled or new offices created and filled at any meeting of the board of directors. Each officer shall hold office until a successor is duly elected and qualified or until his or her earlier death, resignation or removal as hereinafter provided.

Section 3.    Removal.    Any officer or agent elected by the board of directors may be removed by the board of directors whenever in its judgment the best interests of the corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

Section 4.    Vacancies.    Any vacancy occurring in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the board of directors for the unexpired portion of the term by the board of directors then in office.

Section 5.    Compensation. Compensation of all officers shall be fixed by the board of directors, and no officer shall be prevented from receiving such compensation by virtue of his or her also being a director of the corporation.

Section 6.    The President. The president shall be the chief executive officer of the corporation, and subject to the powers of the board of directors, shall have general charge of the business, affairs and property of the corporation, and control over its officers, agents and employees, and shall see that all orders and resolutions of the board of directors are carried into effect. The president shall have the power to execute bonds, mortgages and other contracts, except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be delegated by the board of directors (or by another authorized person) to some other officer or agent of the corporation. The president shall have such other powers and perform such other duties as may be prescribed by the board of directors or as may be provided in these bylaws.

Section 7.    Vice-presidents. The vice-president, or if there shall be more than one, the vice-presidents in the order determined by the board of directors, shall, in the absence or disability of the president, act with all of the powers and be subject to all the restrictions of the president. The vice-presidents shall also perform such other duties and have such other powers as the board of directors, the president or these bylaws may, from time to time, prescribe.

Section 8.    The Secretary and Assistant Secretaries. The secretary shall attend all meetings of the board of directors, all meetings of the committees thereof and all meetings of the stockholders and record all the proceedings of the meetings in a book or books to be kept for that purpose. Under the president's supervision, the secretary shall give, or cause to be given, all notices required to be given by these bylaws or bylaw, and shall have such powers and perform such duties as the board of directors, the president or these bylaws may, from time to time, prescribe. The assistant secretary, or if there be more than one, the assistant secretaries in the order determined by the board of directors, shall, in the absence or disability of the secretary, perform the duties and exercise the powers of the secretary and shall perform such other duties and have such other powers as the board of directors, the president, or secretary may, from time to time, prescribe.

Section 9.    The Treasurer and Assistant Treasurer. The treasurer shall have the custody of the corporate funds and securities; shall keep full and accurate accounts of receipts and disbursements in books belonging to the corporation; shall deposit all monies and other valuable effects in the name and to the credit of the corporation as may be ordered by the board of directors; shall cause the funds of the corporation to be disbursed when such disbursements have been duly authorized, taking proper vouchers for such disbursements; shall render to the president and the board of directors, at its regular meeting or when the board of directors so requires, an account of the corporation; and shall have such powers and perform such duties as the board of directors, the president or these bylaws may, from time to time, prescribe. If required by the board of directors, the treasurer shall give the corporation a bond (which shall be rendered every six (6) years) in such sums and with such surety or sureties as shall be satisfactory to the board of directors for the faithful performance of the duties of the office of treasurer and for the restoration to the corporation, in case of death, resignation, retirement, or removal from office, of all books, papers, vouchers, money, and other property of whatever kind

8

in the possession or under the control of the treasurer belonging to the corporation. The assistant treasurer, or if there shall be more than one, the assistant treasurers in the order determined by the board of directors, shall in the absence or disability of the treasurer, perform the duties and exercise the powers of the treasurer. The assistant treasurers shall perform such other duties and have such other powers as the board of directors, the president or treasurer may, from time to time, prescribe.

Section 10.     Other Officers, Assistant Officers and Agents.  Officers, assistant officers and agents, if any, other than those whose duties are provided for in these bylaws, shall have such authority and perform such duties as may, from time to time, be prescribed by resolution of the board of directors.

Section 11.     Absence or Disability of Officers.  In the case of the absence or disability of any officer of the corporation and of any person hereby authorized to act in such officer's place during such officer's absence or disability, the board of directors may by resolution delegate the powers and duties of such officer to any other officer or to any director, or to any other person whom it may select.

ARTICLE V.

INDEMNIFICATION OF OFFICERS, DIRECTORS AND OTHERS

Section 1.     Nature of Indemnity.  Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer, of the corporation or is or was serving at the request of the corporation as a director, officer, employee, fiduciary, or agent of another corporation or of a partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the corporation to the fullest extent which it is empowered to do so by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than said law permitted the corporation to provide prior to such amendment) against all expense, liability and loss (including attorneys' fees actually and reasonably incurred by such person in connection with such proceeding), and such indemnification shall inure to the benefit of his or her heirs, executors and administrators; provided that, except as provided in Section 2 of this Article V, the corporation shall indemnify any such person seeking indemnification in connection with a proceeding initiated by such person only if such proceeding was authorized by the board of directors.  The right to indemnification conferred in this Article V shall be a contract right and subject to Sections 2 and 5 of this Article V, shall include the right to be paid by the corporation the expenses incurred in defending any such proceeding in advance of its final disposition.  The corporation may, by action of its board of directors, provide indemnification to employees and agents of the corporation with the same scope and effect as the foregoing indemnification of directors and officers.

Section 2.     Procedure for Indemnification of Directors and Officers.     Any indemnification of a director or officer of the corporation provided for under Section 1 of this

9

Article V or advance of expenses provided for under Section 5 of this Article V shall be made promptly, and in any event within thirty (30) days, upon the written request of the director or officer. If a determination by the corporation that the director or officer is entitled to indemnification pursuant to this Article V is required, and the corporation fails to respond within sixty (60) days to a written request for indemnity, the corporation shall be deemed to have approved the request. If the corporation wrongfully denies a written request for indemnification or advancing of expenses, in whole or in part, or if payment in full pursuant to such request is not properly made within thirty (30) days, the right to indemnification or advances as granted by this Article V shall be enforceable by the director or officer in any court of competent jurisdiction. Such person's costs and expenses incurred in connection with successfully establishing his or her right to indemnification, in whole or in part, in any such action shall also be indemnified by the corporation. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any, has been tendered to the corporation) that the claimant has not met the standards of conduct which make it permissible under the General Corporation Law of the State of Delaware for the corporation to indemnify the claimant for the amount claimed but the burden of such defense shall be on the corporation. Neither the failure of the corporation (including its board of directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the General Corporation Law of the State of Delaware, nor an actual determination by the corporation (including its board of directors, independent legal counsel, or its stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

Section 3.    Article Not Exclusive. The rights to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Article V shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the certificate of incorporation, bylaw, agreement, vote of stockholders or disinterested directors or otherwise.

Section 4.    Insurance. The corporation may purchase and maintain insurance on its own behalf and on behalf of any person who is or was a director, officer, employee, fiduciary, or agent of the corporation or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, whether or not the corporation would have the power to indemnify such person against such liability under this Article V.

Section 5.    Expenses. Expenses incurred by any person described in Section 1 of this Article V in defending a proceeding shall be paid by the corporation in advance of such proceeding's final disposition upon receipt of an undertaking by or on behalf of the director or officer or other person to repay such amount if it shall ultimately be determined that he or she is not entitled to be indemnified by the corporation. Such expenses incurred by other employees and agents may be so paid upon such terms and conditions, if any, as the board of directors deems appropriate.

10

Section 6.    Employees and Agents.  Persons who are not covered by the foregoing provisions of this Article V and who are or were employees or agents of the corporation, or who are or were serving at the request of the corporation as employees or agents of another corporation, partnership, joint venture, trust or other enterprise, may be indemnified, and may be advanced expenses, to the extent authorized at any time or from time to time by the board of directors.

Section 7.    Contract Rights.  The provisions of this Article V shall be deemed to be a contract right between the corporation and each director or officer who serves in any such capacity at any time while this Article V and the relevant provisions of the General Corporation Law of the State of Delaware or other applicable law are in effect.  Such contract right shall vest for each director and officer at the time such person is elected to such position, and no repeal or modification of this Article V or any such law shall affect any rights or obligations then existing with respect to any state of facts or proceeding arising after such election.

Section 8.    Merger or Consolidation.  For purposes of this Article V, references to "the corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under this Article V with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued.

## ARTICLE VI.

## CERTIFICATES OF STOCK

Section 1.    Form.  Every holder of stock in the corporation shall be entitled to have a certificate, signed by, or in the name of the corporation by the president or a vice-president, the secretary or an assistant secretary, or the treasurer or an assistant treasurer of the corporation, certifying the number of shares owned by such holder in the corporation.  If such a certificate is countersigned (1) by a transfer agent or an assistant transfer agent other than the corporation or its employee or (2) by a registrar, other than the corporation or its employee, the signature of any such president, vice-president, secretary, or assistant secretary may be facsimiles.  In case any officer or officers who have signed, or whose facsimile signature or signatures have been used on, any such certificate or certificates shall cease to be such officer or officers of the corporation whether because of death, resignation or otherwise before such certificate or certificates have been delivered by the corporation, such certificate or certificates may nevertheless be issued and delivered as though the person or persons who signed such certificate or certificates or whose facsimile signature or signatures have been used thereon had not ceased to be such officer or officers of the corporation.  All certificates representing shares shall be consecutively numbered or otherwise identified.  The name of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, shall be entered on the books of the corporation.  Shares of stock of the corporation shall only be transferred on the books of the

11

corporation by the holder of record thereof or by such holder's attorney duly authorized in writing, upon surrender to the corporation of the certificate or certificates representing such shares endorsed by the appropriate person or persons, with such evidence of the authenticity of such endorsement, transfer, authorization, and other matters as the corporation may reasonably require, and accompanied by all necessary stock transfer stamps. In that event, it shall be the duty of the corporation to issue a new certificate to the person entitled thereto, cancel the old certificate or certificates, and record the transaction on its books. The board of directors may appoint a bank or trust company organized under the laws of the United States or any state thereof to act as its transfer agent or registrar, or both in connection with the transfer of any class or series of securities of the corporation.

Section 2.    Lost Certificates.  The board of directors may direct a new certificate or certificates to be issued in place of any certificate or certificates previously issued by the corporation alleged to have been lost, stolen, or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen, or destroyed. When authorizing such issue of a new certificate or certificates, the board of directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost, stolen, or destroyed certificate or certificates, or his or her legal representative, to give the corporation a bond sufficient to indemnify the corporation against any claim that may be made against the corporation on account of the loss, theft or destruction of any such certificate or the issuance of such new certificate.

Section 3.    Fixing a Record Date for Stockholder Meetings.  In order that the corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the board of directors may, except as otherwise required by law, fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors, and which record date shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting. If the board of directors so fixes a date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the board of directors determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination. If no record date is fixed by the board of directors, the record date for determining stockholders entitled to notice of and to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the board of directors may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the foregoing provisions of this Section 3 at the adjourned meeting.

Section 4.    Fixing a Record Date for Action by Written Consent.  In order that the corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of

directors, and which date shall not be more than ten (10) days after the date upon which the resolution fixing the record date is adopted by the board of directors. If no record date has been fixed by the board of directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the board of directors is required by statute, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the corporation by delivery to its registered office in the State of Delaware, its principal place of business, or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the board of directors and prior action by the board of directors is required by statute, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the board of directors adopts the resolution taking such prior action.

Section 5.    Fixing a Record Date for Other Purposes.  In order that the corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment or any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purposes of any other lawful action, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than sixty (60) days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto.

Section 6.    Registered Stockholders.  Prior to the surrender to the corporation of the certificate or certificates representing a share or shares of stock with a request to record the transfer of such share or shares, the corporation may treat the registered owner as the person entitled to receive dividends, to vote, to receive notifications, and otherwise to exercise all the rights and powers of an owner.

Section 7.    Subscriptions for Stock.  Unless otherwise provided for in the subscription agreement, subscriptions for shares shall be paid in full at such time, or in such installments and at such times, as shall be determined by the board of directors. Any call made by the board of directors for payment on subscriptions shall be uniform as to all shares of the same class or as to all shares of the same series. In case of default in the payment of any installment or call when such payment is due, the corporation may proceed to collect the amount due in the same manner as any debt due the corporation.

ARTICLE VII.

GENERAL PROVISIONS

Section 1.    Dividends.  Subject to any applicable provisions of the certificate of incorporation, dividends payable upon the capital stock of the corporation may be declared by the board of directors at any regular or special meeting, pursuant to law. Dividends may be paid in cash, in property, or in shares of the capital stock, subject to the provisions of the certificate of

incorporation. Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the directors from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or any other purpose and the directors may modify or abolish any such reserve in the manner in which it was created.

Section 2.    Checks, Drafts or Orders.    All checks, drafts, or other orders for the payment of money by or to the corporation and all notes and other evidences of indebtedness issued in the name of the corporation shall be signed by such officer or officers, agent or agents of the corporation, and in such manner, as shall be determined by resolution of the board of directors or a duly authorized committee thereof.

Section 3.    Contracts.    The board of directors may authorize any officer or officers, or any agent or agents, of the corporation to enter into any contract or to execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.

Section 4.    Loans.    The corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the corporation or of its subsidiary, including any officer or employee who is a director of the corporation or its subsidiary, whenever, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation.  The loan, guaranty or other assistance may be with or without interest, and may be unsecured, or secured in such manner as the board of directors shall approve, including, without limitation, a pledge of shares of stock of the corporation.  Nothing in this section contained shall be deemed to deny, limit or restrict the powers of guaranty or warranty of the corporation at common law or under any statute.

Section 5.    Fiscal Year.    The fiscal year of the corporation shall be fixed by resolution of the board of directors.

Section 6.    Corporate Seal.    The board of directors may provide a corporate seal which shall be in the form of a circle and shall have inscribed thereon the name of the corporation and the words "Corporate Seal, Delaware".  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise.

Section 7.    Voting Securities Owned By Corporation.    Voting securities in any other corporation held by the corporation shall be voted by the president or any other duly elected officer of the corporation, unless the board of directors specifically confers authority to vote with respect thereto, which authority may be general or confined to specific instances, upon some other person.  Any person authorized to vote securities shall have the power to appoint proxies, with general power of substitution.

Section 8.    Inspection of Books and Records.    Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom.  A proper purpose shall mean any purpose reasonably related to

14

such person's interest as a stockholder. In every instance where an attorney or other agent shall be the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing which authorizes the attorney or other agent to so act on behalf of the stockholder. The demand under oath shall be directed to the corporation at its registered office in the State of Delaware or at its principal place of business.

Section 9.    Section Heading. Section headings in these bylaws are for convenience of reference only and shall not be given any substantive effect in limiting or otherwise construing any provision herein.

Section 10.    Inconsistent Provisions. In the event that any provision of these bylaws is or becomes inconsistent with any provision of the certificate of incorporation, the General Corporation Law of the State of Delaware or any other applicable law, the provision of these bylaws shall not be given any effect to the extent of such inconsistency but shall otherwise be given full force and effect.

Section 11.    Waivers. A written waiver of any notice, signed by a stockholder or director, or waiver by electronic transmission by such person, whether given before or after the time of the event for which notice is to be given, shall be deemed equivalent to the notice required to be given to such person. Neither the business nor the purpose of any meeting need be specified in such a waiver. Attendance at any meeting shall constitute waiver of notice except attendance for the express purpose of objecting at the beginning of the meeting to the transaction of business because the meeting is not lawfully called or convened.

## ARTICLE VIII.

## AMENDMENTS

These bylaws may be amended, altered, or repealed and new bylaws adopted at any meeting of the board of directors by a majority vote. The fact that the power to adopt, amend, alter, or repeal the bylaws has been conferred upon the board of directors shall not divest the stockholders of the same powers.

## ARTICLE IX.

## CERTAIN BUSINESS COMBINATIONS

The corporation, by the affirmative vote (in addition to any other vote required by law or the certificate of incorporation) of its stockholders holding a majority of the shares entitled to vote, expressly elects not to be governed by §203 of the General Corporation Law of the State of Delaware.

<u>EXHIBIT C</u>

Resolutions

*Attached.*

**RESOLUTIONS**

**ADOPTED**

**BY THE**

**BOARD OF DIRECTORS**

**OF**

**GARDEN FRESH RESTAURANT CORP.**

**At the Meeting of the Board of Directors**

**on October 1, 2016**

**Bankruptcy Resolutions**

**WHEREAS**, it has been proposed that each of Garden Fresh Restaurant Corp. (the "Company"), along with its ultimate parent Garden Fresh Restaurant Intermediate Holding, LLC (the "Parent"), and certain of its affiliates, seek relief under the provisions of title 11 of the United States Code (the "Bankruptcy Code") by filing a voluntary petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code;

**WHEREAS**, it has also been proposed that the Company, the Parent and certain affiliates of the Parent (the "Loan Parties") negotiate and, subsequent to the filing of the Petition, enter into that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement"), by and among the Loan Parties, the DIP Lenders and the DIP Agent (each as defined therein), whereby, among other things, the DIP Lenders agree to make certain loans and advances and to provide other financial and credit accommodations to the Company and the other Loan Parties, following the filing of the voluntary petitions under the Bankruptcy Code by each of the Company and the other Loan Parties, and in all respects subject to applicable bankruptcy court orders;

**NOW, THEREFORE, BE IT RESOLVED**, that in the judgment of the Board of Directors of the Company (the "Board"), it is desirable and in the best interest of the Company, its creditors, its equity holders and other interested parties, that the Company be, and it hereby is, authorized, empowered, and directed to file or cause to be filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), at such time as it is deemed necessary by the appropriate officers of the Company, the Petition and all other documents, papers and pleadings necessary or appropriate to effectuate the Petition and any and all other documents, papers and pleadings necessary or appropriate in connection with the Chapter 11 cases of the Company; and

**FURTHER RESOLVED**, that the Chief Executive Officer and the Chief Financial Officer of the Company (each, an "Authorized Officer", and collectively, the "Authorized Officers") be, and each of them, with full authority to act without the others, hereby is, authorized, empowered, and directed (i) to execute and verify the Petition and any other documents, papers and pleadings necessary or appropriate to effectuate the Petition and any and all  other documents, papers and pleadings necessary or appropriate in connection with the Chapter 11 cases of the Company and to cause the Petition and any other documents, papers and pleadings necessary or appropriate to effectuate the Petition and any and all other documents, papers and pleadings necessary or appropriate in connection with the Chapter 11 cases of the Company to be filed with the Bankruptcy Court and (ii) to perform any and all such acts as are reasonable, advisable, expedient, convenient, proper, or necessary, in the discretion of the Authorized Officers, to effect any of the foregoing; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized, empowered, and directed, on behalf of and in the name of the Company, to execute, verify and file or cause to be filed all petitions, schedules, lists, motions, objections, responses, applications, and other papers and documents necessary or desirable in connection with the Chapter 11 cases of the Company; and

**FURTHER RESOLVED**, that the Company, as debtor and debtor-in-possession under Chapter 11 of the Bankruptcy Code, is authorized to incur post-petition indebtedness under the DIP Credit Agreement and the form, terms and provisions of the DIP Credit Agreement and the other DIP Loan Documents (as defined in the DIP Credit Agreement) be, and they hereby are, approved, ratified and confirmed, and the Authorized Officers be, and each of them, with full authority to act without the others, hereby is, authorized, empowered, and directed to execute, deliver, and perform the DIP Credit Agreement and the other DIP Loan Documents, in the name and on behalf of the Company, with such changes therein and additions and amendments thereto and to any other documents related to or described in the DIP Credit Agreement and the other DIP Loan Documents as such Authorized Officer or Authorized Officers shall approve, such Authorized Officer's or Authorized Officers' delivery thereof to be conclusive evidence of such approval and approval of the Board; and

**FURTHER RESOLVED**, that the Company be, and it hereby is, authorized, empowered, and directed to perform its obligations under the DIP Credit Agreement and other DIP Loan Documents, including, without limitation, the granting of liens on all of its assets and obligations in respect of the joint and several liability of the Loan Parties, as applicable, thereunder (and any and all prior grants are hereby reaffirmed in all respects) and paying such fees or amounts as are required under the DIP Credit Agreement and any fee letter(s); and

**FURTHER RESOLVED**, that the Authorized Officers be, and each of them, with full authority to act without the others, hereby is, authorized, empowered and directed to prepare, execute and deliver, in the name and on behalf of the Company, such documents, letters, certificates, and other written instruments as may be necessary or appropriate in connection with the Company's execution, delivery, and performance of the DIP Credit Agreement and the other DIP Loan Documents and any other documents related thereto or described therein, as applicable; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain the law firms of Morgan, Lewis & Bockius LLP ("Morgan Lewis") and Young Conaway Stargatt & Taylor, LLP ("Young Conaway") as bankruptcy counsel to render legal services to, and to represent, the Company in connection with the Chapter 11 cases and all other related matters in connection therewith, on such terms as the Authorized Officers, and such other officers as they shall from time to time designate shall approve; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain the firm of Epiq Bankruptcy Solutions, LLC ("Epiq") as notice and claims agent and administrative advisor to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 cases and all other related matters in connection therewith, on such terms as the Authorized Officers, and such other officers as they shall from time to time designate shall approve; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain Piper Jaffray Companies ("Piper Jaffray" and together with Morgan

Lewis, Young Conaway, and Epiq, the "Professionals") to render financial and restructuring advice and services to, and to represent, the Company in connection with the Chapter 11 cases and all other related matters in connection therewith, on such terms as the Authorized Officers, and such other officers as they shall from time to time designate shall approve; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain on behalf of the Company any additional counsel, accountants, and other advisors as the Authorized Officers, or any of them, may deem appropriate; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to take or cause to be taken any and all such further actions and to execute and deliver any and all such further instruments and documents and to pay all such expenses, costs, fees, or taxes, in each case, as in his or their judgment shall be necessary or desirable in order fully to carry out the intent and accomplish the purposes of the resolutions adopted herein; and

**FURTHER RESOLVED**, that all acts lawfully done or actions lawfully taken by any director or officer of the Company or any of the Professionals in connection with the DIP Credit Agreement, the other DIP Loan Documents, the reorganization or liquidation of the Company or any matter related thereto, or by virtue of these resolutions be, and they hereby are, in all respects ratified, confirmed and approved; and

**FURTHER RESOLVED**, the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized with full power of delegations, for and in the name and on behalf of the Company, to amend, supplement, or otherwise modify from time to time the terms of any documents, certificates, instruments, agreements, or other writings referred to in the foregoing resolutions; and

**FURTHER RESOLVED**, that any and all actions of any officer or director of the Company taken prior to the date hereof to carry out the purposes of the foregoing resolutions be, and they hereby are, ratified, approved, and confirmed in all respects.

## General Resolutions

**FURTHER RESOLVED**, that the officers of the Company be, and each of them hereby is, authorized and empowered, in the name and on behalf of the Company, to make all such arrangements, to do and perform all such acts and things, and to execute and deliver all such officers' certificates and such other instruments and documents as they may deem appropriate in order to effectuate fully the purpose and intent of each and all of the foregoing resolutions, and that any and all actions taken heretofore and hereafter to accomplish such purposes and intents, all or singular, be, and they hereby are, approved, ratified, and confirmed.

********

4

## EXHIBIT D

### Officers

| Name | Office | Signature |
|------|--------|-----------|
| John D. Morberg | Chief Executive Officer and President | |
| David A. Carr | Chief Financial Officer, Secretary and Treasurer | |
| R. Gregory Keller | Vice President | |
| Michael Dorsey | Assistant Secretary | |